IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| COMPANIA SUD AMERICANA DE VAPORES S.A., | ) ) ) | |
| | ) | Law No. 3:11-cv-3027 |
| Plaintiff, | ) ) | |
| | ) | |
| vs. | ) ) | |
| SINOCHEM TIANJIN LIMITED f/k/a/ | ) | **VERIFIED COMPLAINT** |
| SINOCHEM TIANJIN IMPORT AND | ) | |
| EXPORT CORP., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Compania Sud Americana de Vapores S.A. ("CSAV" or "Plaintiff") by and through its attorneys, Lane & Waterman LLP, for its Verified Complaint against Defendant Sinochem Tianjin Limited f/k/a Sinochem Tianjin Import and Export Corp. ("Sinochem Tianjin" or "Defendant"), a foreign corporation, alleges as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.      This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.      At all times relevant hereto, CSAV is and was a foreign business entity organized under the laws of Chile that is engaged in the business of ocean transportation. Founded in 1872, it is one of the oldest shipping companies in the world.

3.      Upon information and belief, at all times relevant hereto, Sinochem Tianjin is and was a foreign business entity organized under the laws of China. Sinochem is engaged in the

sale and manufacture of chemical products, engages in regular and systematic business activities with entities in the United States.  Upon information and belief, Sinochem Tianjin maintains an address at 58 Nanjing Road, Tianjin, China.

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333 because this action arises from a maritime contract and/or a maritime tort - to wit, the explosion of Defendant's chemical product, calcium hypochlorite, shipped aboard CSAV's vessel pursuant to a maritime bill of lading.  Furthermore, the English Judgment (defined below) was issued by an English Admiralty Court.

5.     Upon information and belief, Sinochem Tianjin has made at least 130 chemical shipments to United States customers, located in various states, in the past five years.

6.     Upon information belief, this number may be substantially higher because Sinochem utilizes "freight forwarding agents" such as Tianjin Tianlian International, with the effect that these freight forwards are *defacto* aliases with respect to Defendant's shipments and corresponding disclosures to the United States imports bureaus.

7.     Upon information and belief, Sinochem Tianjin regularly solicits the business of United States customers and advertises its chemical products to United States customers, which actions form the basis of Sinochem's United States customers' orders.

8.     Upon information and belief, a number of affiliated, U.S.-based, Sinochem entities act as agent for, and provide U.S.-based services on behalf of, Sinochem Tianjin.  These entities include Sinochem American Holdings, Inc., Sinochem (USA) Inc., USAC Holdings Inc., SC Polymers Inc., Sinochem American Capital Corporation, and Sinochem American Capital Corporation, and Sinochem American CP Co. (collectively the American Sinochem Entities).

9.      According to the Sinochem Group website for Sinochem American Holdings Inc. (attached hereto as Exhibit 1), their purpose is to "realize Sinochem's strategy in the U.S./America and to provide all-round support to affiliated enterprises…"

10.     Furthermore, "As a representative office and a management body of affiliated subsidiaries in America, Sinochem American Holdings, Inc. fully exerts its advantage in resources control to conduct business in fields of trade, financing, and hi-tech by setting foot in the largest trade partner, the largest financial market, and the leading hi-tech country:

1. Supporting affiliated enterprises to develop sustainable core businesses and enlarge Sinochem trade to U.S. market.

2. Discussing the possibility to conduct asset management to support the capital operation of Sinochem, and to serve the need for fund-raising and capital enlargement.

3. Preparing for the layout of Sinochem's investment strategy and making contributions to the development of hi-tech industry.

4. Fully exerting its functions as a window and service platform to support Sinochem's development in America and coordinate the development strategy of Sinochem business groups."

## CSAV'S CLAIM AGAINST SINOCHEM TIANJIN

11.     This action arises from the December 30, 1998 explosion aboard the M/V Aconcagua (the "Vessel"), CSAV's time-chartered vessel, which caused widespread damage to the vessel and its cargo.

12.     The cause of the explosion was the self ignition of 334 kegs of calcium hypochlorite ("Cargo") shipped by Sinochem Tianjin.

13.     Sinochem is liable to CSAV for damages arising from the explosion of the Cargo it shipped.

14.     The Cargo had abnormal high thermal instability, prone to self-heat at ordinary carriage temperature. As a result it exploded at temperatures which were ordinarily to be expected onboard the vessel during the voyage.

15.     CSAV initiated litigation against Sinochem in the English High Court to determine Sinochem Tianjin's liability for the explosion as well as CSAV's damages (the "English Litigation").  Sinochem fully participated in all phases of the English Litigation.

16.     CSAV successfully argued that Cargo was of a dangerous nature of which CASV neither had, nor ought to have had knowledge, and that CSAV had not knowingly consented to the shipment of the Cargo of such a nature.

17.     On July 24, 2009,  CSAV obtained an English High Court judgment against Sinochem Tianjin (the "High Court Judgment").  A true and correct copy of the High Court Judgment is attached hereto as Exhibit 2, Part A through p. 60; Part B pp. 61-109.

18.     The High Court Judgment holds Sinochem Tianjin liable for the explosion - *inter alia,* that Defendant's calcium hypochlorite "was of a dangerous nature of which CSAV did not, nor ought it to have had, knowledge." It further held that Sinochem Tianjin's defenses failed.  *See* Exhibit 2 at 96.

19.     The English High Court made an initial determination awarding CSAV $27,750,000.00 in damages.  This amount is what CSAV itself has already paid in connection with arbitration initiated against it by the Vessel's owner in connection with the calcium hypochlorite incident.

20.     Sinochem appealed the High Court Judgment.  On December 9, 2010, the English Court of Appeal affirmed the High Court Judgment (the "English Appeal Decision") (together

with the High Court Judgment, the "English Judgment").  A true and correct copy of the English Appeal Decision is attached hereto as Exhibit 3.

21.     The English Appeal Decision directs Sinochem Tianjin to pay US$ 27,750,000.00 plus interest accruing from May 17, 2006, (~$4,398,244) and costs ( 707,000) (~$1,118,272). Hence, the value of CSAV's English Judgment to date is approximately $33,266,516.

22.     The deadline for Sinochem Tianjin to appeal the English Court of Appeal's affirmation has passed and no further appeal is possible under English law.

23.     The English High Court expressly reserved judgment on the issue of CSAV's remaining damages claims, which total approximately $24,921,431.00 (the "Additional Damages Claims").

24.     CSAV is presently litigating its Additional Damages Claims in London.  The Additional Damages Claims are fully set forth at 16(ii) & 16 (iii) on the damages schedule attached hereto as Exhibit 4 ("Damages Schedule").

25.     In the London litigation, Sinochem is disputing various aspects of the Damages Schedule, both in terms quantum and liability.  The proceeding is ongoing.

26.     Despite due demand, Sinochem Tianjin has failed to pay CSAV any portion of the English Judgment, which now totals $33,266,516.00.  Despite due demand, Sinochem Tianjin has failed to pay CSAV any portion of the remaining $24,921,431.00 in damages that it has suffered as a result of the explosion. Accordingly, CSAV has suffered damages in the total approximate amount of $58,187,947.00.

**WHEREFORE,** Plaintiff prays that:

1.      That judgment be entered in favor of Plaintiff and against Defendants in the amount of US$58,187,947.00; and

2.      That this Court grant Plaintiff such other and further relief which it may deem just and proper.

Dated: May 24, 2011

LANE & WATERMAN LLP

By:  /s/ *Robert B. McMonagle*
Robert B. McMonagle
220 N. Main Street, Suite 600
Davenport, IA 52801-1987
Telephone: (563) 324-3246
Facsimile: (563) 324-1616
Email: rmcmonagle@l-wlaw.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| COMPANIA SUD AMERICANA DE VAPORES S.A., | ) ) ) | Law No. 11-3027 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| SINOCHEM TIANJIN LIMITED f/k/a/ SINOCHEM TIANJIN IMPORT AND EXPORT CORP., | ) ) ) ) | **VERIFICATION** |
| Defendant. | ) ) | |

STATE OF IOWA          )
                       )  ss.:
COUNTY OF SCOTT        )

ROBERT B. MCMONAGLE, being duly sworn, deposes and says:

I am a member of the firm of LANE & WATERMAN LLP, counsel for Compania Sud Americana de Vapores S.A. ("CSAV"), Plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by CSAV's representative and corresponded with CSAV's representatives regarding this matter. I am authorized by CSAV to make this verification, and the reason for my making it as opposed to an officer or director of CSAV is that there are none within the jurisdiction of this Honorable Court.

 /s/*Robert B. McMonagle*
Robert B. McMonagle
LANE & WATERMAN LLP
220 N. Main Street, Suite 600
Davenport, IA 52801-1987
Telephone: (563) 324-3246
Facsimile: (563) 324-1616
Email: rmcmonagle@l-wlaw.com